UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARCY M.,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. C18-576-MLP

ORDER

## I.    INTRODUCTION

Plaintiff seeks review of the denial of her applications for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred in (1) finding at step three that she does not meet a listing, (2) discounting her subjective testimony, and (3) assessing certain medical opinions. (Dkt. # 14 at 2.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## II.    BACKGROUND

Plaintiff was born in 1964, graduated from high school and has some college education, and has worked as a bartender, cashier, shipping/receiving clerk, grocery store stocker, deli worker, fruit sorter, prep cook, and cleaner. AR at 52, 207, 768-73. At the time of the most

ORDER - 1

recent administrative hearing, Plaintiff had last been gainfully employed sometime in 2016. *Id*. at 768-69.

In June 2008, Plaintiff protectively applied for benefits, alleging disability as of June 1, 2007. *Id.* at 68-69, 194-98. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at 72-75, 79-85. After the ALJ conducted a hearing on November 18, 2010 (*id.* at 30-67), the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 15-25.

The Appeals Council denied Plaintiff's request for review (*id.* at 1-6), and the United States District Court for the Eastern District of Washington granted the parties' stipulation to reverse the ALJ's decision and remand the case for further proceedings. *Id.* at 400-04. Plaintiff filed subsequent applications for benefits in 2011, which were denied initially and upon reconsideration, and, after a hearing (*id*. at 1006-26), the ALJ issued a decision dated February 7, 2013, finding Plaintiff not disabled. *Id.* at 411, 527; Supplemental AR (dkt. # 24) at 12-23, 136-51, 154-67, 230-39. The Appeals Council consolidated the 2008 and 2011 applications, and remanded the matter for further proceedings on the consolidated claims. AR at 411, 527, 838-39.

An ALJ held another hearing, on October 14, 2014 (*id.* at 1027-51), and issued another decision denying Plaintiff's claims. *Id.* at 806-19. Plaintiff sought judicial review, and the United States District Court for the Eastern District of Washington granted the parties' stipulation to reverse the ALJ's decision and remand the case for further proceedings. *Id.* at 825-29. The Appeals Council remanded this matter to an ALJ, in accordance with the court order. *Id.* at 847-49. An ALJ held another hearing on September 27, 2017 (*id.* at 752-802), and subsequently issued a decision again finding Plaintiff not disabled. *Id.* at 710-29.

1 | Utilizing the five-step disability evaluation process,[1] the ALJ found:

Step one: Plaintiff worked since her alleged onset date, but that work did not rise to the level of substantial gainful activity.

Step two: Plaintiff's degenerative disk disease, status post ganglion cyst on the right knee, affective disorder, bilateral carpal tunnel syndrome status post release surgery on the right, borderline intellectual functioning, anxiety disorder, and substance addiction disorder are severe impairments.

Step three: These impairments do not meet or equal the requirements of a listed impairment.[2]

Residual Functional Capacity ("RFC"): Plaintiff can perform light work, with additional limitations: she can lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can sit, stand, and walk six hours each in an eight-hour workday. She can frequently perform postural movements, except only occasionally climb ladders, ropes, and scaffolds, and occasionally stoop, kneel, crouch, and crawl. She must avoid concentrated exposure to vibrations, and hazards such as heights and dangerous moving machinery. She can occasionally push/pull for operation of foot pedals bilaterally with the lower extremities. She has sufficient concentration, persistence, and pace to sustain simple, routine tasks in two-hour increments with the usual and customary breaks in an eight-hour workday. She can adapt to simple workplace changes as may be required for simple, routine task work. She can perform work activity that does not require more than General Educational Development level of two in reasoning, math, and language.

Step four: Plaintiff can perform past relevant work as an agricultural produce sorter, and therefore she is not disabled.

Step five: In the alternative, because there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, she is not disabled.

*Id.*

Plaintiff appealed the ALJ's decision of the Commissioner to this Court.

### III.  LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV. DISCUSSION

### A. The ALJ Did Not Err in Finding that Plaintiff Did Not Meet a Listing

Plaintiff argues that because the evidence shows that she meets the requirements of Listing 12.02, the ALJ's failure to explicitly discuss this listing was harmful. (Dkt. # 14 at 6-9.)

*1. Legal Standards*

At step three, the ALJ considers whether one or more of a claimant's impairments meet or medically equal an impairment listed in Appendix 1 to Subpart P of the regulations. "The listings define impairments that would prevent an adult, regardless of his age, education, or work

experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (emphasis in original; citations omitted).

Plaintiff bears the burden of proof at step three. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). A mere diagnosis does not suffice to establish disability. *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985). "[An impairment] must also have the *findings* shown in the Listing of that impairment." *Id*. at 1549-50 (quoting § 404.1525(d); emphasis added in *Key*). To meet a listing, an impairment "must meet *all* of the specified medical criteria." *Sullivan*, 493 U.S. at 530 (emphasis in original).

### 2. *Listing 12.02*

Plaintiff argues that she meets Listing 12.02 because she satisfies paragraphs A and B, which require:

> A. Medical documentation of a significant cognitive decline from a prior level of functioning in *one* or more of the cognitive areas:
> 1. Complex attention;
> 2. Executive function;
> 3. Learning and memory;
> 4. Language;
> 5. Perceptual-motor; or
> 6. Social cognition.
>
> AND
>
> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
> 1. Understand, remember, or apply information.
> 2. Interact with others.
> 3. Concentrate, persist, or maintain pace.
> 4. Adapt or manage oneself.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02 (internal citations omitted). Plaintiff argues that the ALJ erred in failing to explicitly consider Listing 12.02, and in failing to find that she met it. As explained in the following subsections, the Court rejects both of Plaintiff's contentions.

1                                 i.         Consideration of Listing 12.02

Plaintiff argues that the ALJ erred in failing to consider Listing 12.02. (Dkt. # 14 at 6.) She is mistaken: the ALJ explicitly found that Plaintiff did not meet any of the 12.00 listings, which includes Listing 12.02. AR at 714. Although the ALJ did not list every single 12.00 listing that Plaintiff did not satisfy, Plaintiff cites no requirement that the ALJ do so and the Court is not aware of any.

                                ii.        Paragraph B

The ALJ explicitly found that Plaintiff does not satisfy the Paragraph B criteria, rating her deficits in all of the four categories as mild. AR at 714-15. Plaintiff cites various medical opinions that she contends indicate that her functioning in the first and third categories (understanding, remembering, or applying information, and concentrating, persisting, and maintaining pace) was instead markedly impaired. (Dkt. # 14 at 8-9 (citing AR at 287, 295, 540, 1094, 1113).) None of the evidence explicitly rates Plaintiff's functioning as markedly impaired in the Paragraph B categories, however. AR at 287, 295, 540, 1094, 1113. Moreover, the ALJ discounted all of the evidence Plaintiff cites. *Id.* at 725-26. Thus, although Plaintiff interprets the evidence in a way that satisfies the Paragraph B criteria, she has not shown that the ALJ's interpretation of the evidence is unreasonable. *See Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

Because Plaintiff has not established that the ALJ erred in finding that she does not satisfy Paragraph B of Listing 12.02, the Court need not address Paragraph A because Plaintiff cannot meet Listing 12.02 without satisfying Paragraph B. Plaintiff has not met her burden to establish the existence of an error at step three in the ALJ's decision.

**B.     Any Error in the ALJ's Assessment of Plaintiff's Testimony is Harmless**

The ALJ discounted Plaintiff's testimony for a number of reasons: (1) the objective medical evidence is inconsistent with Plaintiff's knee, back, hand, and mental complaints; (2) Plaintiff's inaccurate statements regarding substance use undermines the reliability of her self-reporting; and (3) the record reflects an impact from non-impairment situational stressors (such as grief due to death of family members, financial worries, transportation problems, the relapse of a roommate, and homelessness). AR at 718-23. Plaintiff disputes the ALJ's reasoning with respect to the medical record, arguing that the ALJ erred in finding that her testimony was undermined by her lack of treatment for her back and hands, her improvement with injections, her "fairly benign exam findings," and her purportedly inaccurate reports of a potential need for surgery.

*1.     Legal Standards*

It is the province of the ALJ to determine what weight should be afforded to a claimant's testimony, and this determination will not be disturbed unless it is not supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). Absent affirmative evidence showing that the claimant is malingering,

the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina*, 674 F.3d at 1112). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

When evaluating a claimant's subjective symptom testimony, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation," including a claimant's reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *Thomas*, 278 F.3d at 958-59 (citing *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

### 2. *Lack of Treatment*

Plaintiff argues that the ALJ erred in finding that her lack of recent treatment undermined her allegations, because she explained at the hearing that she was unable to pursue treatment during the time that she was homeless, and the ALJ "improperly failed to consider" this explanation. (Dkt. # 14 at 17.) But Plaintiff is mistaken: the ALJ addressed that testimony, explained that "homelessness is not a basis for a finding of disability[,]" and found that the evidence shows that when Plaintiff is receiving treatment, she can perform light work consistent with the ALJ's RFC assessment. AR at 722-23.

The ALJ therefore did not fail to consider Plaintiff's explanation for a lack of treatment, but instead found that when Plaintiff did present for treatment, some of her symptoms improved. *Id.* at 718-23. The ALJ did not err in assessing Plaintiff's RFC assuming treatment, because treatable impairments cannot be disabling and an RFC represents the most a claimant can do. *See*

*Warre v. Comm'r of Social Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (RFC "is the most you can still do despite your limitations.").

The ALJ also noted that even when Plaintiff did have stable housing, she nonetheless failed to attend multiple mental health appointments. AR at 723 (citing *id*. at 363-493). Plaintiff has not shown that the ALJ erred in considering her lack of treatment during some parts of the adjudicated period.

### 3. *Improvement With Treatment*

Plaintiff argues that the ALJ erred in focusing on her improvement with treatment, namely epidural steroid injections for her back pain. (Dkt. # 14 at 17.) Plaintiff argues that even though she did experience improvement with injections, her pain was exacerbated when she was working part-time in 2016, as she testified at the hearing. (*Id.* (citing AR at 768-69).) The hearing testimony cited by Plaintiff indicates that when she was working part-time in 2016, her knee and hand complaints prevented her from working, rather than back pain. AR at 769. Plaintiff has therefore not identified any part of the record that undermines the ALJ's finding that injections were effective in resolving Plaintiff's back pain.

### 4. *"Fairly benign exam findings"*

Plaintiff disputes the ALJ's characterization of the record as containing "fairly benign exam findings," pointing to MRI results, radicular symptoms, and positive straight leg raise tests. (Dkt. # 14 at 18 (citing AR at 1209).) It is not clear why the MRI results cited by Plaintiff (AR at 1209) necessarily undermine the ALJ's interpretation of the record: the MRI results describe mild and moderate findings, and after reviewing those results, the doctor recommended injections. *Id.* at 1203-04. Plaintiff has not pointed to evidence contradicting the ALJ's interpretation of the record.

5. *Need for Surgery*

The ALJ noted that Plaintiff "testified that she had been told she would need surgery if the injections were ineffective," but the ALJ found that "there is no mention of surgery in any of the orthopedic clinical notes." *Id*. at 720. As noted in Plaintiff's brief, one of the clinical notes does corroborate Plaintiff's hearing testimony. (Dkt. # 14 at 18 (citing AR at 1204).) That one note in a record more than 2,200 pages long contradicts the ALJ's finding amounts to harmless error, given the other valid reasons — some of which are unchallenged by Plaintiff — the ALJ provided for discounting Plaintiff's testimony. *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

**C.     The ALJ Did Not Err in Assessing Medical Opinions**

Plaintiff challenges the ALJ's assessment of many medical opinions, and the Court will address the sufficiency of the ALJ's reasoning as to each disputed opinion in turn. For the following reasons, the Court affirms the ALJ's assessment of the disputed opinions.

1. *Legal Standards*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick*, 157 F.3d at 725. "This can be done by setting out a

detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss,* 427 F.3d at 1216.

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas*, 278 F.3d at 957; *Orn*, 495 F.3d at 632-33.

    2. *Alnoor Virji, M.D.; Arthur Lorber, M.D.; and Donald G. Hill, M.D.*

The ALJ gave significant weight to the opinions of Drs. Virji, Lorber, and Hill. AR at

723. Dr. Virji reviewed Plaintiff's records in December 2011, and opined that Plaintiff could perform light work with some additional limitations, including postural and environmental restrictions. Supp. AR at 109-11. The ALJ acknowledged that Dr. Virji's opinion was "rendered some time ago," but found that nonetheless the opinion is the "most accurate characterization of the most the claimant can do." AR at 723. The ALJ also found that Dr. Virji's conclusions were mostly consistent with Dr. Lorber's 2010 testimony (*id.* at 43-51) (and to the extent Dr. Lorber's testimony deviated from those conclusions, the ALJ found the testimony not persuasive) and Dr. Hill's 2008[3] opinion (Supp. AR at 781-84).

Plaintiff argues that the ALJ erred in relying on opinions from 2008, 2010, and 2011 in assessing her RFC in 2018 because her condition deteriorated after that time, specifically with respect to her hands and the progression of her degenerative disc disease. (Dkt. # 14 at 11.) Plaintiff does not point to any recent opinion that documents a decline in functionality, however, and does not argue that the ALJ overlooked any treatment notes during a more recent time period. The ALJ's decision contains a thorough discussion of the entire treatment record, and the ALJ had the opportunity to consider whether the opinions of Drs. Virji, Lorber, and Hill were consistent with the longitudinal record. AR at 718-21. The ALJ specifically discussed Plaintiff's allegations of hand limitations and back pain, and explained why she found Plaintiff's allegations to be inconsistent with the entirety of the record. The age of the opinions of Drs. Virji, Lorber, and Hill is not dispositive, because the ALJ found that those opinions nonetheless accurately reflected Plaintiff's RFC and Plaintiff has not pointed to specific credible evidence showing otherwise. Citing various clinical findings does not show that Plaintiff is less functional than the

---

[3] The ALJ referred to Dr. Hill's opinion as an "April 2017" opinion, but it was actually written April 17, 2008. AR at 723, Supp. AR at 781-84. This scrivener's error did not affect the ALJ's ultimate disability determination and is therefore harmless.

ALJ found her to be, and therefore Plaintiff has not met her burden to show error in the ALJ's assessment of the opinions of Drs. Virji, Lorber, and Hill.

        *3.        Janelle Walhout, M.D.*

Dr. Walhout, Plaintiff's treating primary care provider, completed a form DSHS opinion in May 2011, describing physical limitations that she believed would persist for six months. Supp. AR at 330-31. Specifically, Dr. Walhout opined that Plaintiff could stand for two hours and sit for four hours in an eight-hour workday. *Id.* at 330.

The ALJ noted that Dr. Walhout's opinion was limited in temporal scope, thus failing to satisfy the Social Security Act's twelve-month durational requirement. *See* 42 U.S.C. § 423 (d)(1)(A) (disability means "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months"); 20 C.F.R. §§ 404.1505, 1509 (to meet definition of disability, claimant must have a severe impairment preventing work; impairment must have lasted or be expected to last at least twelve months). This is a specific, legitimate reason to discount Dr. Walhout's opinion, because it is less probative to the ALJ's inquiry given its limited scope. *See, e.g.*, *Hall v. Colvin*, 2014 WL 1285914, at *3-4 (E.D. Wash. Mar. 31, 2014); *Bales v. Astrue*, 2011 WL 923571, at *13 (E.D. Cal. Mar. 14, 2011).

The ALJ also noted that Dr. Walhout referred Plaintiff to vocational counseling and preemployment activities, which the ALJ found to be inconsistent "with a conclusion that [she] was incapable of standing, walking, and/or sitting through a full workday." AR at 723 (citing Supp. AR at 331). Plaintiff argues that these are not actually inconsistent, because Dr. Walhout may have intended that Plaintiff could work part-time. (Dkt. # 14 at 11.) Plaintiff has not shown that the ALJ's interpretation of Dr. Walhout's opinion is unreasonable, and therefore has not

established error in the ALJ's decision simply by positing an arguably reasonable interpretation of her own. *See Morgan*, 169 F.3d at 599. The ALJ's interpretation is particularly reasonable in light of Dr. Walhout's contemporaneous treatment note, which indicates that Plaintiff "[m]ay not be appropriate for heavy labor, but there are many jobs she can do." Supp. AR at 339. It is not unreasonable to assume Dr. Walhout was referring to full-time jobs in that note, and to find that to be inconsistent with Dr. Walhout's opinion. *See Bayliss*, 427 F.3d at 1216 (holding that an ALJ's rejecting a physician's opinion due to discrepancy or contradiction between opinion and the physician's own notes or observations is "a permissible determination within the ALJ's province").

Accordingly, the Court finds that the ALJ discounted Dr. Walhout's opinion for legally sufficient reasons.

*4. Caryn Jackson, M.D.*

Dr. Jackson, Plaintiff's treating provider, completed a DSHS form opinion in October 2012, describing Plaintiff's moderate radiculopathy and scoliosis, and opining that these conditions limited Plaintiff to sedentary work. AR at 1147-51. The ALJ discounted Dr. Jackson's opinion, finding it inconsistent with her contemporaneous range-of motion testing and appointment notes, as well as Plaintiff's subsequent improvement with injections. *Id.* at 724.

Plaintiff argues that the ALJ erred in finding Dr. Jackson's conclusions to be inconsistent with her testing and notes, because the ALJ is a layperson. (Dkt. # 14 at 13-14.) ALJs are indeed not medically trained, but case law and the Commissioner's internal rulings affirm an ALJ's ability to consider whether opinions are consistent with the record. *See Bayliss*, F.3d at 1216; SSR 96-5p, 1996 WL 374183, at *3 (Jul. 2, 1996).

Moreover, the ALJ also discounted Dr. Jackson's opinion because it was inconsistent with Plaintiff's subsequent improvement with treatment, namely an injection that eliminated Plaintiff's back pain for "well over a year." AR at 724. Plaintiff argues that in describing her subsequent improvement, the ALJ failed to account for the fact that Plaintiff's physical limitations prevented her from maintaining a job in 2016. (Dkt. # 14 at 13.) But at the time Plaintiff was working in 2016, she had not received an injection since sometime in 2015, and she testified that she could not continue working at that job due to knee and hand (not back) pain. *See* AR at 769, 776. The ALJ did not err in discounting Dr. Jackson's opinion because it failed to describe Plaintiff's long-term functioning with treatment.

Accordingly, the Court finds that the ALJ discounted Dr. Jackson's opinion for legally sufficient reasons.

> 5. *Steven Haney, M.D.*

In Plaintiff's opening brief, she alleged that the ALJ failed to address Dr. Haney's May 2011 opinion. (Dkt. # 14 at 15-16.) The Commissioner pointed out that the ALJ did discuss Dr. Haney's opinion. (Dkt. # 26 at 11-12 (citing AR at 724).) In Plaintiff's reply brief, she appears to abandon her assignment of error with respect to Dr. Haney's opinion. (Dkt. # 27 at 3 (failing to list Dr. Haney's opinion among the opinions challenged).) The Court need not address Dr. Haney's opinion further.

> 6. *Roland Dougherty, Ph.D.*

Dr. Dougherty performed a psychological evaluation of Plaintiff in May 2014, and wrote a narrative report and completed a checkbox form. AR at 528-50. Notably, Dr. Dougherty found that Plaintiff put forth poor effort on memory testing, but he thought "it is likely that she does have some memory difficulties." *Id.* at 539. He also noted that she exhibited significant

obsessive-compulsive disorder symptoms during his evaluation, yet she "appears to have denied such symptoms in the past." *Id*.

The ALJ summarized all of Dr. Dougherty's findings and assigned "minimal weight" to his opinion for several reasons. *Id.* at 725. First, the ALJ noted that Dr. Dougherty did not explain how he accounted for Plaintiff's poor effort on memory testing; Dr. Dougherty indicated that Plaintiff had moderate limitations in her ability to understand, remember, and carry out complex instructions, but cited as support test results that he elsewhere indicated were inaccurate. *See id.* at 528, 537, 539. This is a specific, legitimate reason to discount Dr. Dougherty's opinion. *See Thomas*, 278 F.3d at 958 (affirming an ALJ's discounting of an opinion based on inaccurate testing).

The ALJ also discounted Dr. Dougherty's opinion to the extent that he posited Plaintiff would have attendance problems and social deficits due to her alleged chronic pain, depression and anxiety, because those allegations were inconsistent with the record. AR at 725. Plaintiff argues that the ALJ erred in failing to identify specific inconsistencies, but the ALJ referred to her more detailed discussion of the treatment history in other parts of the decision as well as identifying certain specific inconsistencies, and an ALJ does not err in organizing a decision in this fashion. *Id*. Earlier in the decision, the ALJ highlighted Plaintiff's improvement with injections, and how her depression and anxiety symptoms were also amenable to treatment. *Id.* at 720-22. The ALJ also stated that the record revealed that Plaintiff's attendance problems were based on issues related to her homelessness and lack of transportation, rather than her impairments. *Id.* at 725. Furthermore, the ALJ noted that shortly after Dr. Dougherty's evaluation, Plaintiff began working part-time and did not report experiencing any of the social problems Dr. Dougherty had indicated. *Id*. These aspects of the record are inconsistent with Dr.

Dougherty's conclusions regarding the impact of Plaintiff's pain, depression, and anxiety, and that inconsistency is a specific, legitimate reason to discount Dr. Dougherty's opinion. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (not improper to reject an opinion presenting inconsistencies between the opinion and the medical record).

Accordingly, the Court finds that the ALJ discounted Dr. Dougherty's opinion for legally sufficient reasons.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

Dated this 17th day of April, 2019.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 17